UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SDN LIMITED and STEVEN NERAYOFF,<br><br>Plaintiffs,<br><br>v.<br><br>IOV LABS LIMITED, RIF LABS LIMITED, RSK LABS LIMITED, DIEGO GUTIERREZ ZALDIVAR, and ALEJANDRO MARIA ABERG COBO a/k/a ALEX COBO,<br><br>Defendants. | Case No. 2:24-cv-06089-JMA-AYS<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs SDN Limited ("SDN") and Steven Nerayoff, by their attorneys Loeb & Loeb LLP, as and for their Complaint against Defendants IOV Labs Limited, f/k/a RIF Labs Limited, n/k/a Rootstock Labs Limited ("IOV"), RSK Labs Limited ("RSK"), Diego Gutierrez Zaldivar and Alejandro Maria Aberg Cobo a/k/a Alex Cobo, allege as follows:

## NATURE OF ACTION

1.  This is an action for fraud in connection with Defendants' unregistered offer and sale of Rootstock Infrastructure Framework Tokens ("RIF Tokens"). In 2018, RSK conducted the pre-sale and launch (via its affiliated company IOV) of the RIF Tokens. In the year leading up to the token launch on November 9, 2018, Defendants fraudulently induced Plaintiffs' purchase of tokens in the pre-sale by falsely representing—at meetings with Mr. Nerayoff both within and outside of New York, and in direct phone conversations with Mr. Nerayoff in New York—that the proposed RIF blockchain was a fully functional second-layer blockchain solution, to be launched on the Bitcoin network, that had the then-existing ability to provide Ethereum-style smart contract capabilities and other functionality to the Bitcoin blockchain. Defendants' representations were knowingly false when made. Defendants further falsely represented that the funds raised by the

RIF token pre-sale would be used exclusively to promote the RIF blockchain and develop its operating system protocol. That representation was also false: Defendants did not use the funds raised in the pre-sale to promote the blockchain development and, upon information and belief, diverted the funds to Defendants' principals instead. Plaintiffs reasonably relied upon Defendants' misrepresentations to their detriment, and were wrongly induced to purchase Defendants' RIF tokens (paying in Bitcoin). Following the public launch of the RIF blockchain – on the Ethereum network and not the Bitcoin network – Defendants' fraud was revealed and the Bitcoin value of Plaintiffs' investments declined well over 90%.

## THE PARTIES

2. Plaintiff SDN Limited is a company organized under the laws of the Cayman Islands.

3. Plaintiff Steven Nerayoff is a resident of Nassau County, New York. At all times relevant to this dispute, Mr. Nerayoff resided in Nassau County, New York. Mr. Nerayoff is the President and sole owner of Plaintiff SDN.

4. Defendant RSK is, upon information and belief, a company organized under the laws of the British Virgin Islands with a principal place of business in the British Virgin Islands. Upon information and belief, RSK is wholly owned by Defendant IOV.

5. Defendant IOV is, upon information and belief, a company organized under the laws of Gibraltar with a principal place of business in Gibraltar. Following RSK's solicitation and pre-sale activities, RSK caused IOV to issue RIF tokens on November 9, 2018.

6. Defendant Diego Gutierrez Zaldivar is an individual and, upon information and belief, a citizen and resident of Argentina. At all times relevant hereto, Zaldivar was the Chief Executive Officer of RSK and a Director of IOV.

7. Defendant Alejandro Maria Aberg Cobo is an individual and, upon information and belief, a citizen of Argentina and a resident of Uruguay. At all times relevant hereto, Cobo was an advisor to RSK and a Director of IOV.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest.

9. The Court has personal jurisdiction over Defendants because, as detailed herein: (1) IOV, RSK, and Zaldivar purposely transacted business within the state related to the claims asserted herein; (2) IOV, RSK, and Zaldivar committed tortious acts within the state; and (3) Defendants, and each of them, committed tortious acts without the state causing injury to Plaintiffs within the state and also (a) regularly solicit business within the state and derive substantial revenue from within the state, and/or (b) reasonably expect their tortious acts to have consequences within the state and derive substantial revenue from interstate commerce. Personal jurisdiction over Defendant IOV is also proper because it contracted anywhere to supply goods in the state.

10. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial District.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

11. Upon information and belief, RSK was founded in 2015.

12. In its November 19, 2015 "White Paper Overview," RSK explained why its blockchain project was important for the Bitcoin ecosystem.

13. RSK stated in its White Paper Overview that, although Bitcoin's creation in 2008 revolutionized payments, Bitcoin only included very limited implementation of "smart contracts" (*i.e.*, Turig complete distributed programs).

14. The first blockchain incorporating full "smart contract" capability was the Ethereum blockchain launched in July 2015, just months before RSK published its initial White Paper.

15. At all times relevant hereto, Plaintiff Steven Nerayoff was a well-known and experienced consultant to companies operating in the cryptocurrency and blockchain industries, and was well known in the blockchain community because he had provided advice and consulting services in connection with the launch of Ethereum's Ether token. Mr. Nerayoff is the President and sole owner of Plaintiff SDN (a company bearing his initials).

16. Mr. Nerayoff was first introduced via email to Defendant Zaldivar and other employees of RSK in December 2017, at which time RSK was planning its token pre-sale and public launch.

17. Thereafter, Zaldivar, Cobo, and other RSK employees, advisors, and/or consultants began to solicit Mr. Nerayoff's investment in RSK's token pre-sale. On February 11, 2018, Zaldivar wrote to Mr. Nerayoff in New York confirming that RSK wanted Mr. Nerayoff's participation as an investor.

18. Knowing that Mr. Nerayoff resided in the State of New York, on March 24, 2018, RSK sent Mr. Nerayoff an email entitled "Your exclusive invitation to participate in the RSK Infrastructure Framework Token private sale." As RSK explained in that email, the official name for the project was "RIF by RSK," and the token would be named the "RIF Token." Although RSK's exclusive invitation email stated that RSK's token sale would "start immediately," Plaintiffs did not purchase any RIF tokens at that time.

19. In May 2018, Mr. Nerayoff met Defendant Zaldivar at the Bitcoin Consensus conference that was held in New York City on May 14-16, 2018, as well as surrounding events in New York.

20. During the conference, on May 14th, 2018, Defendant Zaldivar gave a presentation in the Grand Ballroom concerning RSK, in which he touted "RSK" as a "Live," "fully functional" sidechain "powered by the Bitcoin network," and noted that the platform was "the First Public Smart Contract Bitcoin Sidechain."

> **5:10pm** 5:10pm - 5:20pm
> **Grand Ballroom, 3rd Floor**
> **RSK, the First Public Smart Contract Bitcoin Sidechain, is Live!**
> From a White Paper in Consensus 2016 to a fully functional network in 2018, RSK brings the first open source smart contract platform powered by the Bitcoin network.
> Diego Gutierrez Zaldivar, RSK

*See* Consensus 2018 Magazine at 50 (available at < https://downloads.coindesk.com/events/2018/consensus/consensus-2018-magazine.pdf>).

21. On or about May 15, 2018, Zaldivar met with Mr. Nerayoff in New York to further solicit Plaintiffs' investment in RIF tokens. In that discussion, Zaldivar falsely represented to Mr. Nerayoff that (i) the RIF blockchain was a fully functional and "live" sidechain; (ii) the RIF blockchain was launched on the Bitcoin network and brought smart contract capability to the Bitcoin network; and (iii) the proceeds of the token sales were to fund RSK's marketing and expansion of its blockchain and promotion of the RIF operating system protocols. As to the use of the proceeds of the token sales, Zaldivar falsely represented to Mr. Nerayoff that RSK had a strategic partnership in place with Bitclub. Defendants, however, never publicly announced a strategic partnership with Bitclub, nor did Bitclub, and, upon information and belief, the strategic partnership never existed.

22. Separately, following the Bitcoin Consensus conference, in the latter half of May 2018, Defendant Cobo contacted Mr. Nerayoff in New York to facilitate Plaintiffs' investments in RIF tokens. Cobo similarly falsely represented to Mr. Nerayoff that the RIF blockchain was a Bitcoin sidechain that provided Turig complete smart contracts to the Bitcoin network.

23. At the time Defendants made the foregoing representations, and others, upon which Plaintiffs reasonably relied, Defendants knew that the RIF blockchain had no such smart contract functionality.

24. Zaldivar, Cobo, and other employees of RSK and IOV advised Plaintiffs in the latter half of May 2018 that Plaintiffs' proposed purchase of RIF tokens should be made from certain non-parties to which Defendants directed Plaintiffs, and not directly from Defendants.

25. Nonetheless, Defendants solicited and induced Plaintiffs to make these token purchases from specific non-parties, and were aware that Plaintiffs were making these purchases in reliance upon Defendants' misrepresentations.

26. By way of example only, on May 21, 2018, Zaldivar texted Nerayoff in New York that "I [Zaldivar] preserved allocation for you [Nerayoff]," thus confirming Defendants' awareness of Plaintiffs' investments.

27. Plaintiffs reasonably relied upon Defendants' representations made in connection with their offering of RIF tokens and, in detrimental reliance thereon, made a series of purchases of RIF tokens in the pre-launch pre-sale, both via SDN and Mr. Nerayoff personally. In total, Plaintiffs purchased 14,753,200 RIF tokens (with the right to receive certain additional bonus tokens) in exchange for 1,555 Bitcoin.

28. More specifically, in reasonable reliance upon the statements of Zaldivar, Cobo, and other employees of RSK and IOV Plaintiffs engaged in the following transactions:

    a) on May 29, 2018, Mr. Nerayoff caused SDN to purchase 1,707,300 RIF

     tokens for 170.73 Bitcoin;

  b) on May 30, 2018, SDN purchased another 2,770,900 RIF tokens for 227.09 BTC;

  c) in or around May and June 2018, SDN engaged in additional pre-sale token purchases: 1,540,000 RIF tokens for 176 Bitcoin; 1,092,000 RIF tokens for 130 Bitcoin; 840,000 RIF tokens for 110 Bitcoin; 1,40,000 RIF tokens for 170 Bitcoin; 1,680,000 RIF tokens for 205 Bitcoin; 630,000 RIF tokens for 81 Bitcoin; 133,000 RIF tokens for 15.20 Bitcoin; and 160,000 RIF tokens for 20 Bitcoin; and

  d) on June 19, 2018, Mr. Nerayoff personally purchased 2,800,000 RIF tokens directly from IOV, transferring 200 Bitcoin to a digital wallet controlled by IOV (then-know as RIF Labs) as payment therefor.

29. In a text message that Zaldivar later sent to Mr. Nerayoff in New York, Zaldivar acknowledged Mr. Nerayoff's purchase of RIF tokens in his personal capacity.

30. Defendants publicly launched the RIF blockchain on November 9, 2018.

31. Contrary to Defendants' representations to Plaintiffs, the RIF blockchain was not launched as a Bitcoin sidechain. Instead, Defendants' RIF blockchain was launched on the Ethereum network.

32. Separately, but similarly contrary to Defendants' representations to Plaintiffs, the RIF blockchain that was ultimately launched by Defendants had no ability to provide smart contract functionality to the Bitcoin network.

33. When the truth was exposed, Plaintiffs' investments in RIF tokens lost over 90% of their Bitcoin value.

34. Further, contrary to Defendants' representations that the funds raised by the RIF token sale would be used exclusively for the promotion and development of the RIF operating system protocol, the raised funds were not so used. Rather, Defendants diverted such funds to enrich themselves and for matters unrelated to the RIF blockchain.

35. By way of example only, in September 2019, RSK used investor funds to purchase a social media network, Taringa, an entity founded and owned by certain of the same founders as IOV. Thus, the acquisition was merely a mechanism to enrich IOV's founders at the expense of investors.

**FIRST CAUSE OF ACTION**
**Fraud – Against RSK & IOV**

36. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. Defendants RSK and IOV, via their officers, directors and employees, including Defendants Zaldivar and Cobo, made numerous material misrepresentations of fact in connection of their soliciting of Plaintiffs' investments and purchase of RIF tokens, including representations to Mr. Nerayoff that the RIF blockchain was a fully functional Bitcoin sidechain that would bring Ethereum-like full smart contract capability to the Bitcoin network; that Defendants had entered into key strategic partnerships, including with Bitclub; and that the funds raised by the RIF token pre-sale, including Plaintiffs' investments, would be used exclusively for the promotion of the RIF blockchain and the development of its operating system protocol. In reality, these representations were false, knowingly false when made, and made for the purpose of inducing Plaintiffs' investments in RIF tokens that Defendants intended to divert (and did divert) to their principals.

38. Defendants knew that their representations to Plaintiffs were false and material at the time the representations were made, and had reason to expect and intended to make these misrepresentations in order to deceive and to induce Plaintiffs to rely on them and invest in Defendants' RIF tokens. Far different from the representations made by Defendants to Plaintiffs at the time, Defendants were in possession of accurate information that they intentionally and knowingly failed to communicate to, and withheld from, Plaintiffs.

39. Plaintiffs reasonably relied on Defendants misrepresentations, including misrepresentations made to Plaintiffs by Zaldivar and Cobo, and Plaintiffs were thus wrongly and fraudulently induced to purchase millions of RIF tokens in exchange for 1,555 Bitcoin.

40. But for Defendants' fraudulent misrepresentations, concealment and failure to disclose true facts concerning the RIF blockchain and its functional abilities, Plaintiffs would not have purchased RIF tokens, and would not have paid 1,555 Bitcoin therefor, which funds Defendants, upon information and belief, ultimately received.

41. Plaintiffs could not, and did not discover Defendants' fraud until Defendants publicly launched the RIF blockchain on November 9, 2018. Contrary to Defendants' representations to Plaintiffs that the RIF blockchain would be launched on the Bitcoin network as a fully-functional sidechain to Bitcoin and providing smart contract capability to the Bitcoin network, Defendants launched the RIF blockchain on the Ethereum network and it had no ability to provide smart contract capabilities to the Bitcoin network. Defendants' representations that it had entered into a strategic partnership with Bitclub was similarly false. Finally, Defendants' representations that the funds raised by the RIF token pre-sale would be used exclusively to promote the RIF blockchain and develop its operating system protocol was similarly false, and investor funds were diverted, upon information and belief, to Defendants and their principals.

42. As a direct and proximate result of Defendants' fraud, Plaintiffs' investments in RIF tokens lost over 90% of their Bitcoin value.

43. Based upon Defendants' fraud, Plaintiffs are entitled to the rescission of their investments in RIF tokens and the return of their 1,555 Bitcoin.

44. In the alternative, Plaintiffs sustained damages directly and proximately caused by reason of their reliance upon Defendants' misrepresentations of fact, in an amount to be proven at

trial but reasonably believed to be in excess of the jurisdictional requirement. Defendants RSK and IOV are jointly and severally liable to Plaintiffs for such damages.

45. Further, given Defendants' lies, and willful deceit and diversion of Plaintiffs' investments, Plaintiffs are entitled to an award of exemplary and punitive damages in an amount to be proven and determined at trial.

## SECOND CAUSE OF ACTION
## Fraud – Against Zaldivar & Cobo

46. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Defendants Zaldivar and Cobo made numerous material misrepresentations of fact in connection of their soliciting of Plaintiffs' investments and purchase of RIF tokens, including representations to Mr. Nerayoff that the RIF blockchain was a fully functional Bitcoin sidechain that would bring Ethereum-like full smart contract capability to the Bitcoin network; that Defendants had entered into key strategic partnerships, including with Bitclub; and that the funds raised by the RIF token pre-sale, including Plaintiffs' investments, would be used exclusively for the promotion of the RIF blockchain and the development of its operating system protocol. In reality, these representations were false, knowingly false when made, and made for the purpose of inducing Plaintiffs' investments in RIF tokens that Defendants intended to divert (and did divert) to the principals of RSK and IOV.

48. Defendants Zaldivar and Cobo knew that their representations to Plaintiffs were false and material at the time the representations were made, and had reason to expect and intended to make these misrepresentations in order to deceive and to induce Plaintiffs to rely on them and invest in Defendants' RIF tokens. Far different from the representations made by Defendants to

Plaintiffs at the time, Defendants were in possession of accurate information that they intentionally and knowingly failed to communicate to, and withheld from, Plaintiffs.

49. Plaintiffs reasonably relied on Defendants Zaldivar and Cobo's misrepresentations, and Plaintiffs were thus wrongly and fraudulently induced to purchase millions of RIF tokens in exchange for 1,555 Bitcoin.

50. But for Defendants Zaldivar and Cobo's fraudulent misrepresentations, concealment and failure to disclose true facts concerning the RIF blockchain and its functional abilities, Plaintiffs would not have purchased RIF tokens, and would not have paid 1,555 Bitcoin therefor, which funds Defendants, upon information and belief, ultimately received.

51. Plaintiffs could not, and did not discover Defendants Zaldivar and Cobo's fraud until Defendants publicly launched the RIF blockchain on November 9, 2018. Contrary to Defendants' representations to Plaintiffs that the RIF blockchain would be launched on the Bitcoin network as a fully-functional sidechain to Bitcoin and providing smart contract capability to the Bitcoin network, Defendants launched the RIF blockchain on the Ethereum network and it had no ability to provide smart contract capabilities to the Bitcoin network. Defendants' representations that it had entered into a strategic partnership with Bitclub was similarly false. Finally, Defendants' representations that the funds raised by the RIF token pre-sale would be used exclusively to promote the RIF blockchain and develop its operating system protocol was similarly false, and investor funds were diverted, upon information and belief, to Defendants and their principals.

52. As a direct and proximate result of Defendants Zaldivar and Cobo's fraud, Plaintiffs' investments in RIF tokens lost over 90% of their Bitcoin value.

53. Based upon Defendants Zaldivar and Cobo's fraud, Plaintiffs are entitled to the rescission of their investments in RIF tokens and the return of their 1,555 Bitcoin.

54. In the alternative, Plaintiffs sustained damages directly and proximately caused by reason of their reliance upon Zaldivar and Cobo's misrepresentations of fact, in an amount to be proven at trial but reasonably believed to be in excess of the jurisdictional requirement. Defendants Zaldivar and Cobo are jointly and severally liable to Plaintiffs for such damages.

55. Further, given Zaldivar and Cobo's lies, and willful deceit and diversion of Plaintiffs' investments, Plaintiffs are entitled to an award of exemplary and punitive damages in an amount to be proven and determined at trial.

## THIRD CAUSE OF ACTION
### Aiding and Abetting Fraud – Against Zaldivar & Cobo (Pled in the Alternative)

56. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. In the alternative to the Second Cause of Action, Plaintiffs allege as follows.

58. As detailed above, Defendants RSK and IOV engaged in wrongdoing by fraudulently inducing Plaintiffs to invest in RIF tokens during Defendants pre-sale.

59. Defendants Zaldivar and Cobo each had actual knowledge of, and actively participated in, the fraud perpetrated by Defendants RSK and IOV because, inter alia, Defendants Zaldivar and Cobo made the misrepresentations set forth herein.

60. Both Zaldivar and Cobo made the misrepresentations set forth herein intending to deceive Plaintiffs, and intending that Plaintiffs rely on such misrepresentations, which Plaintiffs justifiably did, to their detriment in purchasing RIF tokens during Defendants' pre-sale.

61. Based on the foregoing allegations in the Complaint, Zaldivar and Cobo each knew that the material representations were made, that such representations were false, and intentionally omitted material facts that would have otherwise made the representations not false or misleading. Indeed, there can be no dispute that Zaldivar and Cobo (at a minimum) provided substantial

assistance to advance the fraudulent scheme because, inter alia, they were officers, advisors and/or directors of RSK or IOV, and made the fraudulent representations directly to Plaintiffs.

62. Zaldivar and Cobo each actually knew that Plaintiffs had reasonably and justifiably relied to their detriment on the misrepresentations and fraud alleged herein.

63. Zaldivar and Cobo each intended to and in fact did act with the intent of materially facilitating the commission of the fraud.

64. Accordingly, in the alternative to the Second Cause of Action, Zaldivar and Cobo each are liable to Plaintiffs for aiding and abetting fraud because they each gave substantial assistance to that fraud, as well as encouragement to the others acting on behalf of RSK and IOV in effectuating, and committing an overt act in furtherance of, the fraud upon Plaintiffs.

65. As a direct and proximate result of Zaldivar's and Cobo's aiding and abetting the fraud committed against Plaintiffs, Plaintiffs have sustained damages in the amount to be proven at trial but reasonably believed to be in excess of the jurisdictional requirement. Zaldivar and Cobo are jointly and severally liable to Plaintiffs.

66. Further, given Zaldivar's and Cobo's lies, deceit and diversion of Plaintiffs' investments, Plaintiffs are further entitled to an award of exemplary and punitive damages in an amount to be proven and determined at trial.

## **DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs SDN Limited and Steven Nerayoff respectfully request judgment against Defendants:

a) For rescission of Plaintiffs' investments and the return of Plaintiffs' 1,555 Bitcoin;

b) In the alternative, for monetary damages sustained as a result of each Defendants' wrongful conduct, including interest thereon (both pre-and post-judgment), and that such monetary damages include all compensatory, expectancy, exemplary, punitive and all other types of monetary damages as available;

c) For pre-judgment and post-judgment interest;

d) For costs and disbursements incurred in connection with this action; and

e) For such further and other relief as the Court may determine warranted.

Dated: New York, New York
November 5, 2024

LOEB & LOEB LLP

By: */s/ John A. Piskora*
John A. Piskora (jpiskora@loeb.com)
David A. Forrest (dforrest@loeb.com)
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000

*Attorneys for Plaintiffs*
*SDN Limited and Steven Nerayoff*