**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

November 26, 2024

WRITER'S DIRECT DIAL NO.
**(212) 849-7150**

WRITER'S EMAIL ADDRESS
**michaelcarlinsky@quinnemanuel.com**

<u>VIA ECF</u>

Judge Joan M. Azrack
100 Federal Plaza
Central Islip, NY 11722

Re:   *SDN Limited v. IOV Labs Limited*, Case No. 2:24-cv-06089

Dear Your Honor:

We write on behalf of Defendants Rootstock Labs Limited ("**Rootstock**," the present name for IOV Labs Limited and RIF Labs Limited) and RSK Labs Limited ("**RSK**"). We write pursuant to Rule IV(B) of Your Honor's Individual Rules of Practice to request a pre-motion conference[1] concerning Defendants' anticipated motion to dismiss the Complaint (ECF No. 21), or in the alternative, to compel arbitration.

This case does not belong in the United States. Plaintiffs' claims concern SDN's (a Cayman Islands entity) purchase of RIF Tokens from Rootstock (a Gibraltar entity). Nerayoff first approached Rootstock in early 2018 seeking to purchase RIF Tokens, but Rootstock turned him down—due to uncertainty surrounding U.S. cryptocurrency regulations, Rootstock refused to sell any RIF Tokens to U.S. entities or individuals. Nerayoff instead proposed an alternative solution, stating in an email to Rootstock personnel: "***To alleviate any regulatory concerns there wouldn't be any US investors as all the contributions would be from a foreign entity***. I already allocated to very strategic investors such as ethereum cofounders etc and ***put 1150 BTC into a cayman entity*** in anticipation if that helps."

That "[C]ayman entity" was SDN. But Rootstock still refused to sell to SDN if Nerayoff was its beneficial owner. So to further allay Rootstock's concerns, SDN's tax advisors provided documentation indicating that on March 1, 2018, Nerayoff had transferred his ownership interests in SDN to a Russian national, Yury Smolyar.

Following that transfer of ownership, pursuant to an Early Contribution Agreement ("ECA") that SDN executed on June 15, 2018, ***SDN***—not Nerayoff—purchased 2,800,000 RIF tokens for 200 bitcoins (approximately $1.2 million at the time). Critically, the ECA contained a mandatory arbitration provision in which SDN agreed to waive the right "to have ***any and all Disputes arising from or related to this Agreement*** resolved in a court," and instead, agreed to "arbitrate Disputes through binding arbitration" in Gibraltar.

---

[1]   Pursuant to Rule IV(B) of Your Honor's Individual Rules of Practice, Defendants advise that if the Court holds a pre-motion conference, Mario O. Gazzola, who was licensed in January 2018, will represent Defendants at the conference.

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

In an apparent attempt to side-step the ECA and fraudulently manufacture jurisdiction in this Court, Nerayoff asserts that on June 19, 2018, he "personally purchased 2,800,000 RIF tokens directly from [Rootstock]." Compl. ¶ 28(d). This allegation is demonstrably false, and concurrently with this Letter, Defendants have served Plaintiffs and their counsel with a Rule 11 notice (attached hereto as **Exhibit A**), to give them the opportunity to withdraw their misstatements to the Court prior to Defendants seeking further relief. In reality, as the ECA makes clear, it was SDN, and not Nerayoff, that purchased the 2,800,000 RIF tokens from Rootstock in June 2018.

## I.    The Arbitration Agreement Governs The Parties' Dispute

The international arbitration agreement in the ECA governs this dispute, and falls squarely within the scope of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), as implemented by Chapter 2 of the Federal Arbitration Act ("FAA"). In addition to providing for arbitration in Gibraltar, the ECA grants the *arbitrator* "exclusive authority" to determine "whether a Dispute may be subject to arbitration." While arbitrability is normally a determination for the Court, that is not the case where, like here, "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

While Plaintiffs have attempted to manufacture jurisdiction by including Nerayoff as a Plaintiff (even though SDN acquired all RIF Tokens directly) and by naming Zaldivar and Cobo as defendants, those attempts fail. Because Nerayoff obtained benefits through the transaction governed by the ECA in the form of the RIF Tokens SDN purchased through the transaction, he "knowingly exploit[ed] an agreement with an arbitration clause [and] can be estopped from avoiding arbitration despite having never signed the agreement." *Vitol, Inc. v. Copape Produtos de Petroleo Ltda.,* 2024 WL 1216660, at *8-9 (S.D.N.Y. Mar. 21, 2024) (cleaned up) (finding that a nonsignatory that ultimately took possession of shipments resulting from a contract received direct benefits and compelling arbitration).

Plaintiffs' attempts to sue Zaldivar and Cobo to avoid the arbitration agreement similarly fail. First, the ECA by its own terms includes Zaldivar and Cobo, because it sets forth that references to "any Party *shall include that Party's personal representatives*." Second, even if Zaldivar and Cobo were not covered by the plain text of the ECA, Plaintiffs' claims against Zaldivar and Cobo are identical to their claims against Rootstock, and thus they cannot escape arbitration. *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (finding that plaintiff cannot escape arbitration with respect to claims asserted against non-signatories when plaintiff treated signatories and non-signatories alike); Compl. ¶ 37 ("Defendants RSK and IOV, via their officers, directors and employees, *including Defendants Zalidvar and Cobo* . . .").

## II.    The Complaint Should Be Dismissed For Lack Of Personal Jurisdiction

There is no dispute that all Defendants are not "at home" in New York and that the Court does not have general jurisdiction over Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Plaintiffs' Complaint also fails to establish specific jurisdiction over Defendants. The Complaint relies on one alleged incidental meeting in New York, and a handful of alleged emails

and calls between Nerayoff and Defendants to argue that specific jurisdiction is proper. But Plaintiffs fall short of establishing that the transaction had its "center of gravity" in New York, where the ECA excludes U.S. persons and where Nerayoff had divested his interests of SDN prior to SDN entering into the ECA. *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'"); *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 439–40 (S.D.N.Y. 2003) ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state."). And even if the Court had personal jurisdiction over Defendants, the Complaint should be dismissed under *forum non conveniens* due to the mandatory Gibraltar forum selection clause in the ECA. *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023).

## III.    Should The Court Reach The Merits, The Complaint Fails To State A Claim

Should the Court reach the merits of the dispute, the Complaint fails to state a claim. ***First***, Nerayoff—the only party with a connection to New York—has no standing to assert a claim because he did not enter into a transaction with Defendants. *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987) ("A shareholder—even the sole shareholder— does not have standing to assert claims alleging wrongs to the corporation."). ***Second***, Plaintiffs' allegations fall short of the heightened Rule 9(b) pleading standard for fraud. Plaintiffs fail to explain why any alleged misrepresentations—which relate to the functioning of the RSK sidechain—are relevant to Plaintiffs' purchase of RIF Tokens. *Rostami v. Open Props, Inc.*, 2024 WL 1313713, at *3 (S.D.N.Y. Mar. 26, 2024) (under Rule 9(b), plaintiff must "explain why the statements were fraudulent"). ***Third***, Plaintiffs fail to allege justifiable reliance in light of the repeated disclaimers in the ECA regarding the risks surrounding the technology. *Id.* (dismissing fraudulent inducement claim relating to purchase of crypto tokens where documents disclosed risks including risks relating to adoption of the technology). ***Fourth***, Plaintiffs fail to allege fraudulent intent. Plaintiffs' allegations that Defendants made the statements with the intent to induce Plaintiffs to acquire RIF Tokens for the purpose of diverting the money are "entirely conclusory," and provide no factual basis for the assertion—particularly with respect to SDN's alleged purchases from ***third parties***. *Rostami*, 2023 WL 137748, at *5 (allegation that defendants made false representations "with the intent of never creating a decentralized network . . . and planned to exit the venture . . . leaving investors with worthless tokens" was "entirely conclusory").

Finally, in light of Plaintiffs' failure to timely file a complaint pursuant to CPLR 3012(b), Plaintiffs' claims are barred by the six-year statute of limitations for fraud. CPLR 213(8). While initiating a case through a summons with notice ordinarily prevents the statute of limitation from expiring, a Plaintiff must timely file a Complaint within 20 days of receiving a demand pursuant to CPLR 3012(b) in order to maintain that privilege. Here, Plaintiffs failed to file a Complaint for over 45 days, and when they finally filed, they did not show "reasonable excuse for the default and a meritorious claim." *Imperiale v. Prezioso*, 781 N.Y.S.2d 580, 582 (N.Y. Sup. Ct. 2004). Accordingly, the Complaint must be dismissed for failure to prosecute, meaning that the six-year statute of limitations for fraud bars Plaintiffs' claims, which concern alleged transactions from May and June 2018. *Id.* at 583-84 (dismissing complaint for failure to timely file following a demand for complaint, and finding that therefore, "the statute of limitations expired in the case").

Sincerely,

*/s/ Michael B. Carlinsky*

Michael B. Carlinsky

CC:    All counsel of record