UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SDN LIMITED and STEVEN NERAYOFF,

      Plaintiffs,

-against-

IOV LABS LIMITED, RIF LABS LIMITED, RSK LABS LIMITED, DIEGO GUTIERREZ ZALDIVAR, and ALEJANDRO MARIA ABERG COBO a/k/a ALEX COBO,

      Defendants.

Case No. 2:24-cv-06089-JMA-AYS

---

## MEMORANDUM OF LAW IN OPPOSITION TO LOEB & LOEB LLP'S MOTION TO WITHDRAW

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Michael B. Carlinsky
Mario O. Gazzola

295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
mariogazzola@quinnemanuel.com

*Attorneys for IOV Labs Limited, RIF Labs Limited, and RSK Labs Limited*

**TABLE OF CONTENTS**

                                                            **Page**

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................6

I.     LOEB'S MOTION TO WITHDRAW IS DEFICIENT BECAUSE IT IS NOT ACCOMPANIED BY AN AFFIDAVIT FROM AN ATTORNEY WHO SEEKS TO WITHDRAW ..................................................................................................6

II.    PRIOR TO PERMITTING LOEB TO WITHDRAW, THE COURT SHOULD ORDER LOEB TO DISCLOSE THE REASON FOR ITS TERMINATION ....................7

III.   THE COURT SHOULD RETAIN JURISDICTION OVER LOEB FOR SANCTIONS ...............................................................................................................9

IV.   TO MITIGATE FURTHER DELAY, LOEB SHOULD BE ORDERED TO RESPOND TO DEFENDANTS' PRE-MOTION CONFERENCE LETTER, AND PLAINTIFFS' TIME TO ENGAGE NEW COUNSEL SHOULD BE SHORTENED ..........................................................................................................10

CONCLUSION ..................................................................................................................11

i

Case 2:24-cv-06089-JMA-AYS   Document 33   Filed 01/10/25   Page 3 of 17 PageID #: 262

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Antonio v. Beckford*,
  2006 WL 2819598 (S.D.N.Y. Sept. 29, 2006)..................................................................11

*Boca View Condo. Ass'n, Inc. v. Lepselter*,
  2023 WL 7101222 (S.D. Fla. Oct. 27, 2023)......................................................................9

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003)................................................................10

*DePallo v. Burge*,
  296 F. Supp. 2d 282 (E.D.N.Y. 2003) ................................................................................9

*In re Filosa*,
  976 F. Supp. 2d 460 (S.D.N.Y. 2013)................................................................................9

*Nerayoff v. StormX Global SEZC, Inc.*,
  Index No. 618611/2023, Dkt. No. 130 (N.Y. Sup. Ct. Nassau Cty. Jan. 8, 2024) ............................................................................................................................6, 11

*Papadatos v. Home Depot U.S.A, Inc.*,
  2022 WL 2612353 (E.D.N.Y. June 10, 2022) ....................................................................7

*S.E.C. v. Gibraltar Global Securities, Inc.*,
  2015 WL 2258173 (S.D.N.Y. May 8, 2015) ......................................................................7

*Stair v. Calhoun*,
  722 F.Supp.2d 258 (E.D.N.Y.2010) ...................................................................................7

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
  464 F. Supp. 2d 164 (E.D.N.Y. 2006) ............................................................................7, 8

*Weinberger v. Provident Life & Cas. Ins. Co.*,
  1998 WL 898309 (S.D.N.Y. Dec.23, 1998) .......................................................................8

### **Rules / Statutes**

9 U.S.C. § 204..............................................................................................................................3

9 U.S.C. § 205..............................................................................................................................3

28 U.S.C. § 1337..........................................................................................................................3

CPLR 305(b).................................................................................................................................2

CPLR 3012(b) ........................................................................................................................3, 10

E.D.N.Y. Local R. 1.4 ............................................................................................................6, 7

NY ST RPC Rule 3.3 ..............................................................................................................8, 9

NY ST RPC Rule 3.3(a)(1) .........................................................................................................9

NY ST RPC Rule 3.3 Cmt. 10 ....................................................................................................9

Fed. R. Civ. P. 11 ............................................................................................................. passim

Fed. R. Civ. P. 11(b)(1) ..............................................................................................................3

Fed. R. Civ. P. 11(c)(2) ..........................................................................................................1, 4

Rootstock Labs Limited ("Rootstock," the present name for IOV Labs Limited and RIF Labs Limited), and RSK Labs Limited ("RSK") respectfully submit this memorandum of law in opposition to Loeb & Loeb's ("Loeb") motion to withdraw as counsel of record for Plaintiffs SDN Limited ("SDN") and Steven Nerayoff (together, "Plaintiffs").[1]

Loeb initiated this case on Plaintiffs' behalf on May 3, 2024, by filing of a Summons With Notice in the Supreme Court of the State of New York in Nassau County. Subsequently, on July 17, 2024, Loeb sent a letter to Defendants' Gibraltar counsel, demanding a "negotiated settlement" on the basis of Plaintiffs' Summons With Notice.

As early as August 29, 2024, Defendants sent Loeb a letter asking Loeb to explain, on Plaintiffs' behalf, how this action did not violate the arbitration agreement between the parties. Rather than respond, Loeb demanded improper pre-Complaint discovery. Loeb then filed, on Plaintiffs' behalf, a demonstrably false Complaint that, rather than grapple with the arbitration agreement at all, merely pretended it did not exist by falsely asserting that Nerayoff as an individual made a purchase from Rootstock, rather than SDN.

Defendants immediately pointed out these false statements by serving a Rule 11(c)(2) notice on Loeb, demanding that Loeb withdraw the false statements in the Complaint by December 17, 2024. Rather than withdrawing the false statements, on December 16, 2024, ***the day before Defendants could file a motion for sanctions under Rule 11(c)(2)***, Loeb filed a pre-motion conference letter seeking to withdraw as counsel. And now, pursuant to the instant motion, Loeb seeks permission to withdraw as counsel on the basis of a declaration by an attorney who is

---

[1] Rootstock and RSK, and counsel acting on its behalf do not waive any and all defenses, including, without limitation, all defenses available under the Federal Rules of Civil Procedure, and do not submit to jurisdiction. In particular, the Rootstock Defendants do not waive any defenses relating to personal jurisdiction, venue, or arbitrability, and do not concede that the United States District Court for the Eastern District of New York is the proper forum for this dispute.

purportedly "primarily responsible" for the engagement, but who curiously: (1) did not appear in the state court action; (2) did not sign the July 17, 2024 letter to Defendants' Gibraltar counsel demanding a negotiated resolution; (3) was not copied on any correspondence with Defendants' counsel regarding this matter; and, (4) perhaps most importantly, has not filed an appearance in this case.

While Defendants take no position on whether Loeb should ultimately be permitted to withdraw as counsel, Loeb should be required to disclose to the Court, consistent with its ethical obligations, whether it believes or now has reason to believe that the Complaint Loeb filed and signed has false statements. The Court should also retain jurisdiction over Loeb even if Loeb is permitted to withdraw, for purposes of Defendants' forthcoming motion for sanctions. Finally, in light of the extensive delays already caused by Plaintiffs' repeated failure to meet deadlines, Plaintiffs' time to engage new counsel should be shortened.

## BACKGROUND

This action relates to an entirely foreign transaction between two foreign parties governed by a certain Early Contribution Agreement ("ECA") between Rootstock and SDN. The ECA—which is governed by Gibraltar law—contains a mandatory arbitration provision and a Gibraltar venue-selection clause. In short, this case does not belong in the United States, and does not belong in court.

Notwithstanding those provisions, on May 3, 2024, SDN and Nerayoff initiated a case in the Supreme Court of the State of New York for Nassau County by Summons With Notice in lieu of complaint pursuant to CPLR 305(b). Dkt. 1-2. Defendants IOV Labs Limited, RIF Labs Limited, and RSK Labs Limited were served with the Summons with Notice on August 2 and August 12, 2024. Dkt. 1, ¶ 8.

2

On August 29, 2024, Rootstock sent Loeb a letter placing Loeb and Plaintiffs on notice of Plaintiffs' breach of the parties' arbitration agreement and asking Plaintiffs to explain the basis on which they contended their purported claims did not breach the ECA's mandatory arbitration clause. Dkt. 13-2. On August 30, 2024, Rootstock removed the Summons With Notice to this Court under 28 U.S.C. § 1337 and 9 U.S.C. §§ 204 and 205, citing the arbitration provision contained in the ECA as the primary reason for withdrawal. Dkt. 1. That same day, pursuant to CPLR 3012(b), Rootstock demanded a full complaint be served within twenty days. Dkt. 8.

Rather than respond substantively to Rootstock's August 29 letter, or to Rootstock's demand for a complaint, on September 3, 2024, Loeb responded to Rootstock's August 29 letter demanding "copies of any agreements between your clients and either Steven Nerayoff or SDN Limited." Dkt. 13-3. Because Loeb's response suggested that Loeb failed to review or inquire about all relevant agreements prior to filing the Summons with Notice, on September 16, 2024, Rootstock's counsel put Loeb on notice of the risk of Rule 11 violations should Loeb proceed in filing a full complaint without a proper inquiry or evaluating whether Plaintiffs' claims violated Rule 11(b)(1). *Id.*

Plaintiffs missed their deadline to file a complaint without justification, and instead, improperly demanded pre-Complaint discovery. Dkts. 13, 13-3, 13-4. On November 5, 2024—47 days after Plaintiffs' September 19, 2024 deadline under CPLR 3012(b) and only after being ordered to do so—Plaintiffs filed the Complaint; once again with no explanation or excuse for their delay. Dkt. 21.

Plaintiffs' Complaint, prepared and signed by Loeb, contains demonstrably false statements used in an attempt to fraudulently manufacture jurisdiction in this Court. Specifically, the Complaint falsely alleges that Nerayoff—rather than SDN—purchased RIF Tokens from

3

Defendants directly. The purpose for this misstatement is clear: Plaintiffs knew that SDN signed the ECA containing an arbitration provision, and tried to get around the agreement by lying to the Court. On November 26, 2024, Defendants served a letter on Loeb pursuant to Federal Rule of Civil Procedure 11(c)(2) outlining just a sampling of the false information in the Complaint and notifying Loeb that Defendants would move for Rule 11 sanctions against Plaintiffs and Loeb in 21 days. Dkt. 22-1. The 21-day clock was set to expire on December 17, 2024.

Among the many false statements in the Complaint, the most significant is the assertion that on June 19, 2018, Nerayoff "personally purchased 2,800,000 RIF tokens directly from IOV, transferring 200 Bitcoin to a digital wallet controlled by IOV." Compl. ¶ 28(d). Loeb knows that Nerayoff never purchased a single RIF Token from Defendants. Rather, the only Plaintiff that purchased RIF Tokens is SDN, pursuant to the ECA. Indeed, Rootstock only agreed to sell RIF Tokens to SDN, a Cayman entity, after assurances by Nerayoff that "there wouldn't be any US investors as all contributions would be from a foreign entity," and after SDN's tax advisor represented that Nerayoff transferred all his interests in SDN to Yuri Smolyar, a Russian national. *See* Dkt. 22-1 at 2-3. Only then, on May 16, 2018, did Rootstock execute the ECA with SDN. The ECA shows that Rootstock sold the 2,800,000 RIF tokens to SDN, not Nerayoff. *Id.* at 52.

The Complaint further falsely asserted that SDN purchased RIF Tokens from third parties between May and June 2018, Compl. ¶ 28(a), (b), (c). As Loeb knew or should have known upon reasonable inquiry, RIF Tokens were not generated until November 9, 2018 and, thus, there were no RIF Tokens in circulation in May and June 2018 that SDN could have purchased. Dkt. 22-1.

Moreover, Plaintiffs' Complaint falsely asserts that the "RIF blockchain was launched on the Ethereum network" rather than as a Bitcoin sidechain. Compl. ¶ 31. Even if Loeb had no familiarity with the technology, their client, Nerayoff, was an senior advisor of Ethereum in its

4

early stages and a sophisticated cryptocurrency investor, making it highly improbable that Nerayoff misunderstood the technology, in which there is a Rootstock blockchain (not a RIF blockchain) which was released as a Bitcoin sidechain, and RIF tokens that allow users to consume RIF protocols running on the Rootstock blockchain. Dkt. 22-1. While the Rootstock blockchain was also compatible with Ethereum network when it was launched, it has always been a Bitcoin sidechain as well. Thus, Loeb knew, or could have easily discovered upon reasonable inquiry that the information was false.

The timeline of events, and even the allegations in the Complaint support the inference that this was not just merely a case in which a client lied to its counsel. Rather, several factors suggest Loeb was or should have been aware upon reasonable inquiry of the ECA before filing the Complaint: (1) Defendants informed Loeb of the ECA on August 29 and September 16, Dkts. 13-2, 13-3; (2) Defendants' unopposed removal was based on the ECA, Dkt. 1; (3) Plaintiffs' Complaint appears to challenge provisions of the ECA, despite not naming it, *compare* Compl. ¶ 34 ("[C]ontrary to Defendants' representations that the funds raised by the RIF token sale would be used exclusively for the promotion and development of the RIF operating system protocol, the raised funds were not so used.") *with* Dkt. 22-1 at 15 (discussing the promotion of the RIFOS Protocols); and, (4) based on the Complaint's allegations, Loeb appears to have reviewed the very correspondence in which Nerayoff informed Defendants that he would make his contribution via an offshore vehicle, SDN, rather than in his own name, *compare* Compl. ¶ 17 (referencing February 11, 2018 email chain) *with* Dkt. 22-1 at 6 (Feb. 11, 2018 email chain, in which Nerayoff states that "all the contributions would be from a foreign entity").

Instead of withdrawing the Complaint and correcting the false representations therein, on December 16, 2024, ***one day before the 21-day deadline to withdraw the Complaint pursuant to***

***Defendants' Rule 11 notice***, Loeb filed a request for a pre-motion conference in advance of a motion to withdraw as counsel. Dkt. 26. On January 3, 2015, Loeb filed its motion to withdraw. Dkt. 29. However, despite attempting to withdraw in this case, the very Loeb lawyers who have signed the pleadings here, ***continue to represent Nerayoff in other proceedings in New York***. Indeed, just two days ago, on January 8, 2025, those Loeb attorneys field an answer to counterclaims in *Nerayoff v. StormX Global SEZC, Inc.*, Index No. 618611/2023, Dkt. No. 130, (N.Y. Sup. Ct. Nassau Cty. Jan. 8, 2024).

In short, the history of Plaintiffs' and Loeb's actions in this case reveal that the case was initiated improperly, in violation of a contract containing a mandatory arbitration clause, and at all relevant times, Loeb knew or was on notice of these facts. Loeb nevertheless attempted to assist its clients in manufacturing jurisdiction in this case by inventing a transaction between Nerayoff and Defendants out of whole cloth.

In support of its motion to withdraw, Loeb filed the declaration of Christopher A. Ott. Mr. Ott asserted that he is "primarily responsible for Loeb's engagement by Plaintiff Steven Nerayoff and his related companies." Dkt. 30 ¶ 1. But Mr. Ott did not sign or appear on any of the pleadings in the state court case, *see* Dkt. 1-1—Dkt. 1-13, has never signed or even been copied in any correspondence between counsel, has not signed any of the pleadings or submissions filed in this case, and has not filed an appearance in this action.

## ARGUMENT

I.  **LOEB'S MOTION TO WITHDRAW IS DEFICIENT BECAUSE IT IS NOT ACCOMPANIED BY AN AFFIDAVIT FROM AN ATTORNEY WHO SEEKS TO WITHDRAW**

As a threshold matter, an attorney may only withdraw "upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case." E.D.N.Y. Local R. 1.4. Here, while Loeb filed the declaration of Mr. Ott, Mr. Ott has not appeared

in this action.  It is not Mr. Ott who seeks to withdraw, but rather the attorneys who appeared in this action.  Accordingly, consistent with Local Rule 1.4, Loeb should be required to file an affidavit by one of the attorneys who are actually seeking to withdraw from the matter.

## II. PRIOR TO PERMITTING LOEB TO WITHDRAW, THE COURT SHOULD ORDER LOEB TO DISCLOSE THE REASON FOR ITS TERMINATION

"Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court." *Stair v. Calhoun,* 722 F.Supp.2d 258, 264 (E.D.N.Y. 2010).  When considering whether to grant a motion to withdraw, courts analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.  *S.E.C. v. Gibraltar Global Securities, Inc.*, 2015 WL 2258173, at *1 (S.D.N.Y. May 8, 2015).  In analyzing the reasons for withdrawal, courts often look to the New York Rules of Professional Conduct ("NYRPC"), which govern the conduct of attorneys who practice in New York federal courts.  *See Papadatos v. Home Depot U.S.A, Inc.*, 2022 WL 2612353, at *1 n.1 (E.D.N.Y. June 10, 2022) ("The New York Rules of Professional Conduct govern the conduct of attorneys in federal courts sitting in New York as well as in New York State courts." (citation omitted)).

When an attorney seeks to withdraw from a representation, the opposing party is entitled to know the "basis for the motion."  *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006).  Loeb argues that withdrawal is appropriate because "[f]ollowing numerous discussions with Mr. Nerayoff concerning the litigation of this action, on December 16, 2024, Mr. Nerayoff (for himself and on behalf of his company, Plaintiff SDN Limited) relieved Loeb & Loeb LLP of its services as counsel in respect to this action."  Dkt. 30 ¶ 5.

However, Loeb's justification is suspiciously silent regarding the reasoning for its termination.  The timing of the termination—the day before the deadline to correct the Complaint's false statements imposed by Defendants' Rule 11 notice—raises serious questions.  Loeb's

7

"numerous discussions with Mr. Nerayoff concerning the litigation of this action" apparently occurred only after Defendants' requested a pre-motion conference which, not only discussed "Defendants' anticipated motion to dismiss the Complaint" but also provided notice that Defendants had served Plaintiffs and their counsel with a Rule 11 notice. Dkt. 22-1. Subsequently, the ***day before*** Plaintiffs and Loeb were required to withdraw the Complaint to avoid Defendants' Rule 11 motion, Loeb sought a pre-motion conference in advance of its motion to withdraw as counsel. Loeb should therefore have to account to the Court for ***why*** it was terminated so that the Court may determine whether Plaintiffs knowingly made false statements in their Complaint, before Defendants are required to expend further time, money, and effort in responding to a sham Complaint. Did Plaintiffs terminate Loeb to prevent Loeb from retracting the false statements in the Complaint after they were caught? Does Loeb now concede, or at a minimum, have reason to believe, that the statements it filed with the Court are false?

     Requiring Loeb to disclose the reason for its termination to the Court would not violate Loeb's obligations to maintain Plaintiffs' confidences. "[D]ocuments in support of motions to withdraw as counsel are routinely filed under seal where necessary to preserve the confidentiality of the attorney-client relationship between a party and its counsel." *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006); *see also Weinberger v. Provident Life & Cas. Ins. Co.*, 1998 WL 898309, at *1 (S.D.N.Y. Dec. 23, 1998) ("[I]t is appropriate for a Court considering a counsel's motion to withdraw to consider in camera submissions in order to prevent a party from being prejudiced by the application of counsel to withdraw.").

     Additionally, if the reason for Loeb's termination is in fact related to the false statements in the Complaint, Rule 3.3 of the New York Rules of Professional Conduct requires Loeb to do more than just move to withdraw. Loeb must also "correct [any] false statement of material fact

8

or law previously made to the tribunal by the lawyer." NY ST RPC Rule 3.3(a)(1). In particular, when a withdrawal from the representation "will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal confidential information that otherwise would be protected by Rule 1.6." NY ST RPC Rule 3.3 Cmt. 10.

Indeed, Courts in this Circuit have suggested that attorneys who merely withdraw rather than correct false statements violated Rule 3.3 of the New York Rules of Professional Conduct: "Though the Rules themselves are silent as to what remedial measures a lawyer should take to remedy false testimony by a client, Professor Simon, in Simon's Rules of Professional Conduct, suggests three steps: (i) 'call upon the client to correct the false testimony;' (ii) 'move to withdraw;' and (iii) make 'some form of 'disclosure to the tribunal.'" *In re Filosa*, 976 F. Supp. 2d 460, 467 (S.D.N.Y. 2013) (finding that attorney violated Rules 3.3(a)(3) and 3.4(a)(4) by failing to promptly correct client's misleading deposition testimony); *see also DePallo v. Burge*, 296 F. Supp. 2d 282, 291 (E.D.N.Y. 2003) ("An attorney's duty to zealously represent a client is circumscribed by an 'equally solemn duty to comply with the law and standards of professional conduct . . . to prevent and disclose frauds upon the court.").

### III. THE COURT SHOULD RETAIN JURISDICTION OVER LOEB FOR SANCTIONS

Defendants have not yet filed their motion for sanctions in light of Loeb's eleventh hour motion to withdraw. In order to conserve party and judicial resources, Defendants intend to file their motion for sanctions only after Plaintiffs' new counsel appears, in the event new counsel continues to advocate for the false statements in the Complaint. *See, e.g.*, *Boca View Condo. Ass'n, Inc. v. Lepselter*, 2023 WL 7101222, at *2 (S.D. Fla. Oct. 27, 2023) (finding that replacement

9

counsel may be held responsible for positions taken by initial counsel where replacement counsel continues to advocate those positions).

Accordingly, even if the Court grants Loeb's motion to withdraw, the Court should retain jurisdiction over Loeb for purposes of Defendants' forthcoming motion for sanctions. "[A]n attorney's withdrawal from a case does not prevent the imposition of Rule 11 sanctions for papers filed prior to the withdrawal." *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2003 WL 22227956, at *7 (S.D.N.Y. Sept. 26, 2003) (retaining jurisdiction and later sanctioning counsel who had previously withdrawn due to filing of frivolous complaint).

Retaining jurisdiction over Loeb is particularly necessary in the event that, in response to this brief, Loeb doubles down and continues to maintain that the Complaint it filed has no false statements, in the face of all the evidence to the contrary. *E.g.*, Dkt. 22-1.

## IV. TO MITIGATE FURTHER DELAY, LOEB SHOULD BE ORDERED TO RESPOND TO DEFENDANTS' PRE-MOTION CONFERENCE LETTER, AND PLAINTIFFS' TIME TO ENGAGE NEW COUNSEL SHOULD BE SHORTENED

From its inception, this case has been marked by Plaintiffs' delay in prosecuting the action: Plaintiffs served the Summons with Notice on certain Defendants three months after the Summons with Notice was initially filed; in violation of CPLR § 3012(b), Plaintiffs then waited 47 days to file a Complaint and only did so after being ordered by the Court; and after Defendants filed a pre-motion conference letter in advance of seeking a motion to dismiss, Plaintiffs failed to respond to Defendants' request. Now Loeb's withdrawal and request for a 30-day stay of the case further delays Rootstock's and RSK's ability to seek (i) an anti-suit injunction in Gibraltar restraining Plaintiffs' prosecution of this action; (ii) dismissal of this action for lack of personal jurisdiction, or in the alternative, (iii) an order compelling arbitration and staying this case in favor of such arbitration and continues to burden this Court's docket with an action that simply does not belong here. By filing a meritless case based on false statements that necessitated removal to this district

10

on August 30, 2024, Plaintiffs are already in the sixth month of delaying the proceedings and clogging the Court's calendar. By the time of the January 27, 2025 hearing on Loeb's Motion, Plaintiffs will already have had 42 days from their purported December 16, 2024 termination of Loeb to engage new counsel. Plaintiffs should not be granted an additional 30 days beyond that date, further exacerbating the delay.

In similar circumstances, courts in this Circuit have ordered counsel moving to withdraw to respond to pending motions for which responses are overdue. For example, in *Antonio v. Beckford*, 2006 WL 2819598 (S.D.N.Y. Sept. 29, 2006), while a motion to dismiss was pending, plaintiffs' counsel requested leave to file a motion to withdraw, citing plaintiffs' lack of communication. *Id.* at *1. At that point, plaintiffs response to a motion to dismiss was already late by over one month. *Id.* Accordingly, prior to granting counsel leave to withdraw, the court "ordered Plaintiff's counsel to respond to the Defendants' outstanding motions." *Id.* Similarly here, Loeb should be ordered to respond to Defendants' pre-motion conference letter, filed on November 26, 2024, Dkt. 22, to which Plaintiffs were required to respond by December 3, 2024, Dkt. 23. Such relief is especially warranted here where the Loeb attorneys representing Nerayoff in this case continue to represent him in other matters, including making filings on Nerayoff's behalf ***after*** filing their motion to withdraw. *See Nerayoff v. StormX Global SEZC, Inc.*, Index No. 618611/2023, Dkt. No. 130, (N.Y. Sup. Ct. Nassau Cty. Jan. 8, 2024).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Loeb's motion until it provides a fulsome explanation as to why it seeks withdrawal, and should shorten Plaintiffs' deadline to retain new counsel. The Court should also retain jurisdiction over Loeb for purposes of Defendants' forthcoming motion for sanctions.

11

Dated: New York, New York
January 10, 2025

QUINN EMANUEL URQUHART &
 SULLIVAN, LLP

By:  /s/ *Michael B. Carlinsky*
Michael B. Carlinsky
Mario O. Gazzola
295 Fifth Avenue
New York, New York 10016
michaelcarlinsky@quinnemanuel.com
mariogazzola@quinnemanuel.com
212-849-7000

*Attorneys for Defendants IOV Labs Limited, RIF Labs Limited, and RSK Labs Limited*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Michael B. Carlinsky, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,620 words as calculated by the application's word-counting function, excluding the parts of the Affirmation exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 10th day of January, 2025 in New York, New York.

   /s/ Michael B. Carlinsky   
Michael B. Carlinsky
