UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SDN LIMITED and STEVEN NERAYOFF,<br><br>                            Plaintiffs,<br><br>v.<br><br>IOV LABS LIMITED, RIF LABS LIMITED, RSK LABS LIMITED, DIEGO GUTIERREZ ZALDIVAR, and ALEJANDRO MARIA ABERG COBO a/k/a ALEX COBO,<br><br>                            Defendants. | Case No. 2:24-cv-06089-JMA-AYS |

## DECLARATION OF STEVEN NERAYOFF

I, Steven Nerayoff, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, that the following facts are true and correct:

1. I am a plaintiff in this action and make this affidavit based on my personal knowledge. I am competent to testify to the matters stated herein, and if called as a witness, I could and would testify competently thereto.

2. I have never signed the Early Contribution Agreement Relating to RIF Labs Limited's Token Sale ("ECA") that Defendants have submitted as Exhibit A in support of their motion to compel arbitration.

3. The signature that appears on the ECA is not my signature. That signature purports to be from "Yury Smolyar," not from me. I do not know who Yury Smolyar is.

4. I have not seen the ECA that Defendants now invoke in their motion until Defendants provided it to my prior legal counsel at Loeb & Loeb LLP, and who then showed to me, in November 2024.

1

5. I do not recall seeing the arbitration provision in the ECA until my present counsel showed it to me in July 2025.

6. I am the sole owner of SDN Limited and have been at all times relevant to this action.

7. I have never transferred ownership of SDN Limited to anyone, including Yury Smolyar or any other person or entity.

8. I have never authorized anyone, including Yury Smolyar, MF Tax Group, Alex Feldman, or any other person or entity, to sign agreements on behalf of SDN Limited.

9. I have never authorized anyone to act as an agent for SDN Limited in executing the ECA or any other agreement with the Defendants.

10. I have never communicated to any of the Defendants that MF Tax Group or Alex Feldman had authority to act on my behalf or on behalf of SDN Limited.

11. I have never communicated to any of the Defendants that any transfer of SDN ownership had occurred or would occur.

12. Neither SDN nor I personally were ever MF Tax Group's clients.

13. I never gave MF Tax Group authority to bind SDN Limited or me to any agreements or obligations.

14. I never gave Alex Feldman authority to bind SDN Limited or me to any agreements or obligations.

15. I have never ratified, approved, or consented to any actions taken by MF Tax Group, Alex Feldman, or Yury Smolyar with respect to the ECA or any other agreement with Defendants.

16. I am aware that Defendants have submitted a letter purportedly from MF Tax Group dated May 23, 2018, which claims that SDN ownership was transferred to Yury Smolyar, as Exhibit C in support of their motion.

17. I have not seen the letter submitted as Exhibit C in support of Defendants' motion until Defendants provided it to my prior legal counsel at Loeb & Loeb LLP, who then showed to me, in November 2024.

18. I did not authorize MF Tax Group to prepare or send such a letter.

19. I did not request that Alex Feldman prepare such a letter on behalf of SDN Limited or on my behalf.

20. No transfer of SDN ownership to Yury Smolyar or any other person ever occurred, and the representation in the MF Tax Group letter to that effect is false.

21. I never consented to any representation that SDN ownership had been transferred.

22. In or around early 2018, Defendants solicited me to invest in RIF tokens. Defendants solicited me as a strategic contributor and investor, not as a future user of network services.

23. Defendants represented to me that I would be investing in RIF tokens with the expectation that the tokens would appreciate in value once the RIF blockchain was fully developed and promoted using the token sale proceeds.

24. At no time did Defendants represent to me that I was simply pre-purchasing utility services or network functionality.

25. The solicitation materials and communications I received from Defendants described the RIF token offering as an investment opportunity, not as a prepayment for services.

26. On or about May 15, 2018, Diego Gutierrez Zaldivar met with me in New York.

27. At this meeting in New York, Zaldivar solicited me to invest in RIF tokens.

28. At this meeting in New York, Zaldivar made representations to me about the RIF token offering, including representations about strategic partnerships, the use of investor funds, and the existence and involvement of developers working on the RIF blockchain project.

29. At the time Zaldivar met with me in New York on May 15, 2018, he knew I was located in New York and that he was soliciting a New York investor.

30. At the time Zaldivar met with me in New York on May 15, 2018, I had not transferred ownership of SDN Limited to anyone, and SDN remained under my sole ownership and control.

31. During their solicitation of my investment, Defendants made material representations to me regarding:

    a. Strategic partnerships that would support and add value to the RIF ecosystem;

    b. How investor funds would be used to develop the RIF blockchain and related technology;

    c. The existence of developers actively working on the RIF blockchain project;

    d. The technical capabilities and functionality of the RIF blockchain; and

    e. The prospects for appreciation in value of RIF tokens.

32. I relied on these representations in deciding to invest approximately $176 million worth of Bitcoin in RIF tokens through SDN Limited.

33. After making the investment, I discovered that many of the representations Defendants made to me were false, including:

    a. The claimed strategic partnerships either did not exist or did not provide the support and value that Defendants represented;

b. Investor funds were not used as represented for development of the RIF blockchain and technology;

c. The number and involvement of developers working on the RIF project was materially less than represented;

d. The technical functionality of the RIF blockchain was materially less than what Defendants represented it was; and

e. As a result of these falsehoods, RIF tokens lost approximately 90% of their value.

34. At the time Defendants made these representations to me, they knew or recklessly disregarded that these representations were false or misleading.

35. Had I known the truth about these matters, I would not have invested approximately $176 million worth of bitcoin in RIF tokens.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 21, 2025, in Great Neck, New York.

*Steven Nerayoff*
_____
STEVEN NERAYOFF